UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Benjamin C. Riggs, Jr.,
d/b/a Resource Management Company


          v.                          Civil No. 06-cv-366-JD
                                      Opinion No. 2008 DNH 169

Janet Peschong, Personal
Representative for the Estate
of Frank Gregory


                         O R D E R


     Benjamin C. Riggs, Jr., doing business as Resource

Management Company ("RMC"), brought suit against Frank Gregory, a

lawyer who practiced in Oklahoma, alleging claims that arose from

a transaction between RMC and Gregory.  Gregory is now deceased.

Janet Peschong, as the personal representative of Gregory's

estate, asserts a counterclaim, seeking a declaration to limit

the recovery available under the parties' agreement.  Riggs, who

is proceeding pro se, moves for summary judgment on the

counterclaim.


                     Standard of Review

     Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c). The party seeking summary judgment must first demonstrate
the absence of a genuine issue of material fact in the record.
See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party
opposing a properly supported motion for summary judgment must
present competent evidence of record that shows a genuine issue
for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
256 (1986). All reasonable inferences and all credibility issues
are resolved in favor of the nonmoving party. See id. at 255.

Background

Frank Gregory represented plaintiffs who alleged they had
been injured by their use of diet medication known as "Fen-Phen."
During the litigation, Gregory entered into agreements with other
lawyers, including Petroff Associates ("Petroff") and Ted Bonham
and David Hudson ("Bonham & Hudson"), for handling the Fen-Phen
cases. Gregory's agreement with Petroff entitled him to 40% of
the 50% contingent fee earned on their shared cases. Gregory
needed financial assistance to meet his obligations under the
agreement with Petroff, and he entered an agreement with Bonham &
Hudson for financial backing that entitled them to two-thirds of

his 40% share of any contingent fees recovered from the Fen-Phen
cases.

In January of 2003, Gregory contacted Benjamin Riggs at RMC
"asking to obtain funds to support him and his law practice
through the purchase by RMC of a share of his contingency fees
from 67 pending Fen-Phen injury claims ('cases')."  Compl. at 4;
Answer at 2.  Gregory told Riggs about his obligations to Petroff
and Bonham & Hudson.  Riggs and Gregory agreed to a transaction
that was documented by a "Purchase Agreement."  Riggs also
required Petroff and Bonham & Hudson to sign acknowledgments of
RMC's security interest "in all rights arising out of the claims
('Cases') referred to in the referenced Purchase Agreement to the
extent of all funds that become due under it to me for referral
fees . . . ."  Pl. Mem. Ex. C & D.  Riggs sent Gregory a check
for $100,000 on February 7, 2003.

As the Fen-Phen cases progressed, Gregory's arrangement with
Petroff for handling the cases changed.  Some of the Fen-Phen
plaintiffs agreed to a reduced payment formula from the
defendant, while other plaintiffs did not agree and opted out of
the class action settlement.  In 2005, Petroff terminated
representation in the opt-out cases and returned those cases to
Gregory.  Petroff claimed no fees or expenses for the cases that
were returned to Gregory.  Gregory then found new counsel, Kline

3

and Specter, to represent the opt-out plaintiffs in place of
Petroff.

Gregory's relationship with Bonham & Hudson also changed.
After a discussion with Gregory, Petroff sent $27,831.95 to
Bonham & Hudson from fees paid in several of the Fen-Phen cases.
By the end of 2005, however, Gregory decided that Bonham & Hudson
were not entitled to the money he had agreed to pay them.
Gregory brought suit against Bonham & Hudson, contesting the
payments they claimed were due from him.  When Gregory settled
three of the cases that were returned to him by Petroff, he used
the fees from those cases as part of a settlement of his dispute
with Bonham & Hudson.  Gregory also entered an agreement with
American Asset Finance for financial support during the remainder
of the litigation.

Riggs sent a notice of default and a demand for an
accounting to Gregory on August 25, 2006.  Dissatisfied with the
response, Riggs brought suit in Carroll County Superior Court,
alleging claims of breach of contract, fraud, and theft by
conversion.  Gregory, who lived in Oklahoma, removed the case to
federal court on September 29, 2006.

Riggs filed an amended complaint, adding another breach of
contract claim, a claim for conversion, a request for appointment
of a receivership, and a claim of breach of fiduciary duty.  On

4

September 5, 2007, Gregory's attorney notified the court that Gregory had died.  On January 10, 2008, counsel filed an appearance on behalf of Janet Peschong, Personal Representative of the Estate of Frank Gregory.

Peschong was granted leave to file a late answer to Riggs's amended complaint.[1]  With her answer, Peschong asserted a counterclaim seeking a declaratory judgment that Riggs's "rights under the RMC contract are equal to 13.33% of any recovery of the cases described in the contract net of costs claimed by Bonham and Hudson and 'out of pocket costs.'"  Answer at 6.

## Discussion

Riggs moves for summary judgment on Peschong's counterclaim, asserting that the Purchase Agreement did not limit RMC's right to recover the agreed payment to a maximum of 13.33% of Gregory's fees from the Fen-Phen cases.  Peschong objects to the motion, arguing that the parties agreed to the 13.33% limitation.  Peschong also asserts a new defense that the Purchase Agreement is void as against public policy.

---

[1]Gregory filed a late answer and counterclaim while proceeding pro se, which Riggs challenged as untimely.  The court granted Peschong leave to file a late answer and counterclaim.

A.  Purchase Agreement

    The Purchase Agreement includes a choice of law clause which
provides that New Hampshire law controls the interpretation of
the agreement, and the parties do not dispute that New Hampshire
law controls.  Contract interpretation presents a legal issue.
Edwards v. Ral Auto. Group, Inc., 156 N.H. 700, 706 (2008).
"When interpreting a written agreement, [the court] give[s] the
language used by the parties its reasonable meaning, considering
the circumstances and the context in which the agreement was
negotiated, and reading the document as a whole."  Id.  Unless
the disputed provision is ambiguous, the court construes the
parties' intent from the plain meaning of language used in the
agreement.  Glick v. Chocorua Forestlands Ltd. P'ship, 949 A.2d
693, 700 (N.H. 2008).

    The parties appear to agree that under the Purchase
Agreement, Riggs bought an interest in the contingent fees that
Gregory anticipated he would receive from the Fen-Phen cases and
that Gregory's obligation under the Agreement was limited to the
amount of contingent fees he received.  Gregory agreed to pay
Riggs, from his contingent fees and "after out of pocket costs
have been deducted," the $100,000 advanced, an additional
$100,000 flat fee, and $10,000 per month after the first twelve

6

months.  The monthly fee would continue to accrue until Gregory
paid $200,000 plus the amount of monthly fees accrued to that
point in time.

Peschong contends that because Gregory agreed to only a
13.33% share of the contingent fees, with the remainder of the
fees going to Petroff and Bonham & Hudson, the estate's
obligation to Riggs is limited to Gregory's original share of the
fees.  Riggs contends that Peschong is obligated to pay the
amount agreed to in the Purchase Agreement from all fees Gregory
actually received or his estate is receiving from the Fen-Phen
cases, without the 13.33% limit that existed when Petroff and
Bonham & Hudson were involved in the cases.  If Gregory, and now
his estate, only received 13.33% of the fees earned from the Fen-
Phen cases, there would be no dispute because that would be the
amount of fees subject to payment under the Purchase Agreement.

When Gregory took back a large number of cases from Petroff,
however, the fee arrangement with Petroff ended as to those
cases, which resulted in a larger fee for Gregory.  In addition,
Gregory settled his obligation to Bonham & Hudson so that his
arrangement with them also terminated.  As a result of these
changes, Gregory's and his estate's share of the fees generated
by the Fen-Phen cases is more than 13.33%.  Peschong argues that
Riggs's recovery under the Agreement, nevertheless, is limited to

7

13.33% of the fees generated even if Gregory and now the estate
has or will receive more than that amount.

    1.  <u>Plain Meaning</u>

     In paragraph one, the Purchase Agreement states that it
provides RMC "an interest in [Gregory's] contingency fees or
other fees or reimbursements due or paid to [Gregory] in
connection with [the Fen–Phen] lawsuits."  Pl. Mot. Ex. B ¶ 1.
The Purchase Agreement states that Gregory's obligation to pay
RMC depends on recoveries in the Fen–Phen cases that result in
payment of contingent fees.  If no contingent fees were paid,
Gregory would not owe RMC any money.

     The Purchase Agreement does not limit Gregory's share of the
fees to 13.33%.[2]  Instead, Gregory agreed "that RMC's return fee
will be paid out of his/her contingency or other fees paid or due
to [Gregory] in connection with this lawsuit, . . . ."  <u>Id.</u> ¶ 8.
Gregory also agreed to pay RMC at the close of each of the Fen–
Phen cases from his own trust account or from Petroff's trust
account.  Therefore, Gregory was obligated to pay RMC from the

---

    [2]In contrast, however, RMC's security interest in Gregory's
share of the fees, as memorialized in the liens signed by Petroff
and Bonham & Hudson, was limited to the 13.33% share agreed among
them.

fees he earned on the Fen-Phen cases, under the terms of the Agreement, which does not impose a 13.33% limitation.

### 2. Underlying Understanding

Peschong argues that at the time the Purchase Agreement was signed, Riggs knew and agreed that Gregory's share of the fees was limited to 13.33%. She contends that because that limitation existed at the time the Agreement was signed and because the Agreement did not include provisions for the circumstances that occurred later, which increased Gregory's share of the fees, the parties' original understanding is part of the Agreement. Peschong also argues that any contrary interpretation means the Agreement is ambiguous.

### a. Integration Clause

Peschong contends that Gregory notified Riggs that his contingent fees were limited to 13.33% and that the parties intended Gregory's 13.33% share to be the limit of RMC's recovery. The Agreement, however, includes an integration clause: "This Agreement represents the entire agreement between the parties, and all representations, warranties, and conversations are deemed to have been merged into this Agreement." Pl. Mot. Ex. B ¶ 11. An integration clause in an

9

agreement is evidence that the parties intended the agreement to express their entire agreement.  <u>Behrens</u>, 153 N.H. at 504.

Peschong failed to address the integration clause or provide any persuasive basis to conclude that the integration clause does not preclude her theory of an underlying agreement between the parties.  Therefore, in the absence of persuasive contrary evidence, the Purchase Agreement presents the parties' entire agreement and does not include a 13.33% limit on the amount of fees to be earned.

b.  <u>Ambiguity</u>

Unless an agreement is shown to be ambiguous, the court will construe its meaning from the document itself and will not consider extrinsic evidence of the parties' intent.  <u>LeBaron v. Wight</u>, 938 A.2d 891, 894 (N.H. 2007).  "'Ambiguity exists only when the parties could reasonably disagree as to a clauses's meaning.'"  <u>Lassonde v. Stanton</u>, --- A.2d ---, 2008 WL 3540064, at *8 (N.H. Aug. 15, 2008) (quoting <u>Gen. Linen Servs. v. Franconia Inv. Assocs.</u>, 150 N.H. 595, 597 (2004)).  To decide whether an interpretation of disputed language is reasonable, the court "interprets a disputed term according to what a reasonable person would expect it to mean under the circumstances."  <u>Behrens v. S.P. Constr.</u>, 153 N.H. 498, 502 (2006).

In this case, the parties do not dispute the meaning of particular language or a clause used in the Agreement.  Instead, Peschong argues that a 13.33% limit on the amount of fees to be recovered should be read into the Agreement.  Riggs contends that the Agreement does not include that limitation.  The dispute here is not about the meaning of language used in the Agreement but instead raises a question of whether a provision, allegedly intended by the parties, should be read into the Agreement.

In the context of the Agreement, including the integration clause, Peschong's interpretation is not reasonable.  Because only one reasonable interpretation is reasonable, that the Agreement does not limit the fees available to pay RMC to 13.33% of the fees generated by the Fen-Phen cases, no ambiguity exists.

B.  <u>Void as against Public Policy</u>

Alternatively, Peschong argues that the Purchase Agreement is void as against public policy.  That theory, however, is not part of her counterclaim, which seeks a declaration that Peschong's rights under the Agreement "are limited to the rights Mr. Gregory possessed at the time the parties executed the contract.  Accordingly, Defendant seeks a declaration that the Plaintiff's rights under the RMC contract are equal to 13.33% of any recovery of the cases described in the contract net of costs

claimed by Bonham and Hudson and 'out of pocket costs.'"  Because
Riggs seeks summary judgment on Peschong's counterclaim,
Peschong's new theory is not considered here.

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion for
summary judgment on the defendant's counterclaim (document no.
152) is granted.

With the issue of the defendant's counterclaim resolved,
this is an appropriate time for the parties to engage in serious
and good faith efforts to settle this case.  To that end, the
parties may negotiate privately or use the mediation services
offered by the court.  The parties, jointly, shall notify the
court about the status of their settlement efforts **on or before
October 8, 2008.**

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

September 11, 2008

cc:  Peter G. Callaghan, Esquire
     Douglas N. Gould, Esquire

12