UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Benjamin C. Riggs, Jr. d/b/a
Resource Management Company

    v.                                        Civil No. 06-cv-366-JD
                                                    Opinion No. 2009 DNH 022

Janet Peschong, Personal
Representative for the
Estate of Frank Gregory


O R D E R

Trial of this case is scheduled for the trial period beginning on March 17, 2009. The parties have filed pretrial materials, including several motions in limine. These matters are addressed as follows.


I. Background

Frank Gregory, who was a lawyer practicing in Oklahoma, represented plaintiffs in suits against the manufacturers of the weight-loss medication known as "Fen-Phen." In the course of the litigation, Gregory entered into arrangements with various entities to provide financing. In January of 2003, Gregory contacted Riggs, who was doing business as Resource Management Company ("RMC"), offering to sell RMC a share of his contingent fees that Gregory expected to be paid from sixty-seven pending

Fen-Phen cases.  Riggs and Gregory entered a "Purchase Agreement" for that purpose.  Under the agreement, RMC advanced funds to Gregory to finance the Fen-Phen litigation, and Gregory agreed to pay RMC as provided in the agreement.

When Gregory did not pay as Riggs expected he would, Riggs filed suit in New Hampshire state court, alleging breach of contract, fraud, and theft by conversion.  Gregory removed the case to federal court on September 29, 2006.  Gregory brought a counterclaim, seeking a declaratory judgment that Riggs's "rights under the RMC contract are equal to 13.33% of any recovery of the cases described in the contract net of costs claimed by Bonham and Hudson and 'out of pocket costs.'"  Riggs amended his complaint to add a request for appointment of a receiver and a breach of fiduciary duty claim.

The parties engaged in contentious discovery, including multiple discovery motions that required court action.  On September 5, 2007, the court received a letter from Gregory's counsel in which he stated that Gregory had passed away.  The court deemed the letter to be a suggestion of death of Frank Gregory, entered in the record.  Counsel for Gregory then moved to stay the case, pending substitution of a party defendant, which was granted.  On January 8, 2008, Janet Peschong,

Administratrix of the Estate of Frank Gregory, was substituted as the defendant.

Peschong's answer and counterclaim were struck, because they were not timely filed. Her motion for leave to file a late answer and counterclaim was granted, and Peschong filed her answer and the same counterclaim requesting a declaratory judgment limiting RMC's rights under the Purchase Agreement. Riggs moved for summary judgment on the counterclaim, which was granted on September 11, 2008.

In his final pretrial statement, Riggs states that his claims for trial are breach of contract, fraud, and theft by conversion. Although Peschong asserts her counterclaim in her final pretrial statement, the counterclaim was resolved by summary judgment. Therefore, the only issues in the case are Riggs's three claims as stated in the final pretrial statement.

Because the contract in question, the "Purchase Agreement," includes a choice of law clause, specifying New Hampshire law, New Hampshire law provides the governing standard for the breach of contract claim. The parties also are proceeding under New Hampshire law as to Riggs's fraud and theft by conversion claims. Therefore, no choice of law issue arises in this case.

II.  Claims

   A.  Breach of Contract

Riggs alleges that Gregory breached their "Purchase Agreement" by refusing to pay RMC the amount owed under the contract, by failing to put disputed funds in an escrow account, and by making efforts to avoid paying the amounts due under the contract.  In response, Peschong denies that the Purchase Agreement is enforceable, claiming that it is void as against public policy, and argues that the agreement is limited as stated in the counterclaim or no meeting of the minds occurred.  Peschong also denies that Gregory breached the agreement.

Under New Hampshire law, "[a] breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract."  Lassonde v. Stanton, 157 N.H. 582, 956 A.2d 332, 338 (2008) (internal quotation marks omitted).  If a party to a contract "voluntarily puts it out of his power to perform," that action constitutes breach of the contract.  LeTarte v. West Side Dev., LLC, 151 N.H. 291, 296 (2004).  Contract interpretation is a legal determination, which is made by the court.  Lassonde, 956 A.2d at 342.

In granting Riggs's motion for summary judgment on Peschong's counterclaim, the court interpreted certain disputed parts of the Purchase Agreement.  Contrary to Peschong's suggestion in her final pretrial statement, stating her defenses to the breach of contract claim, "[t]he Purchase Agreement does not limit Gregory's share of the fees to 13.33%."  Order, Sept. 11, 2008, at 8.  Gregory agreed in the Purchase Agreement to pay RMC out of his fees paid or due in connection with the Fen-Phen cases and also agreed to pay RMC at the close of each of the Fen-Phen cases.  The meaning of the Agreement has been determined as a matter of law in this case, and the jury will be instructed accordingly.  Because summary judgment was entered dismissing Peschong's counterclaim, the counterclaim is not an issue for trial.

Nevertheless, Peschong argues that no contract existed due to a failure of the parties to reach a meeting of the minds.  She contends that Gregory understood that his obligation to pay RMC under the Agreement was limited as stated in the counterclaim.  She further contends that to the extent Riggs understood their agreement differently, no meeting of the minds occurred, and consequently, no contract was formed.

To form a valid contract, there must be a meeting of the minds, meaning that "the parties must assent to the same

contractual terms." Bel Air Assocs. v. N.H. Dept. of Health & Human Servs., 960 A.2d 707, 710 (N.H. 2008) (internal quotation marks omitted). "A meeting of the minds is present when the evidence, viewed objectively, indicates that the parties have assented to the same terms." Glick v. Chocorua Forestlands Ltd. P'ship. 157 N.H. 240, 252 (2008). Whether a meeting of the minds occurred presents a question of fact. Id.

In response to Riggs's motion for summary judgment on the counterclaim, Peschong raised the issue of whether the parties, or one of them, had a different understanding of the limit on Gregory's payment obligation as stated in the counterclaim. The court determined that the terms of the Agreement were not ambiguous, and that under the plain meaning of the Agreement, the limitation asserted in the counterclaim was not part of the Agreement. In addition, the court held that in light of the integration clause in the Agreement and in the absence of any argument or persuasive basis to ignore the integration clause, the Purchase Agreement represented the parties' entire agreement.

Therefore, Peschong's theory in her final pretrial statement that no contract was formed due to a lack of meeting of the minds has been resolved against her on summary judgment. Peschong will not be permitted to argue or present evidence to support her

theory that Gregory's liability was limited as presented in the counterclaim.

B. <u>Fraud</u>

Riggs contends that Gregory engaged in fraud by deceiving Riggs about his intentions to abide by the terms of the Agreement and the liens granted to RMC under the Agreement, by causing Riggs, through deceit, not to enforce Gregory's obligations under the Agreement, and by representing to Riggs that he could be trusted as an attorney licensed in Oklahoma, including that the Agreement was legal and that he would abide by it. Peschong denies the fraud claim.

To prove fraud, "the plaintiff must prove that the defendant intentionally made material false statements to the plaintiff, which the defendant knew to be false or which he had no knowledge or belief were true, for the purpose of causing, and which does cause, the plaintiff reasonably to rely to his detriment." <u>Hair Excitement, Inc. v. L'Oreal U.S.A., Inc.</u>, --- A. 2d ---, 2009 WL 396272, at *5 (N.H. Feb. 19, 2009) (internal quotation marks omitted); <u>Van Der Stock v. Van Voorhees</u>, 151 N.H. 679, 682 (2005). Fraud in the inducement of a contract is also an actionable tort under New Hampshire law. <u>Id.</u> Fraud must be

proved by clear and convincing evidence.  Hair Excitement, 2009 WL 396272, at *5.

C. Theft by Conversion

An action for conversion arises from the defendant's intentional exercise of unauthorized control over the plaintiff's property that seriously interferes with the plaintiff's right to the property.  Rinden v. Hicks, 119 N.H. 811, 813 (1979); accord Marcucci v. Hardy, 65 F.3d 986, 991 (1st Cir. 1995).  Riggs contends that Gregory "secretly converted funds that were the property of RMC and subject to Mr. Gregory's safekeeping of them as an attorney in trust for RMC."  Fin. Pretrial Statement at 2.

Riggs cites Oklahoma Rule of Professional Conduct 1.15 in support of his conversion claim, apparently relying on that rule as the source of Gregory's duty to hold the funds in trust.  Rule 1.15 pertains to a lawyer's duties to maintain a trust account and to keep his personal property separate from the property of clients or third persons in connection with representation.  Because neither Riggs nor RMC were Gregory's clients and Gregory did not hold their property or money in connection with representation, Rule 1.15 does not appear to apply here.

In addition, to the extent Riggs relies on Rule 1.15 as a basis for liability, that option appears to be foreclosed in

Oklahoma, as it would be in New Hampshire.  The scope of the Rules of Professional Conduct excludes reliance on the Rules as a basis for civil liability.  See Okla. Turnpike Auth. v. Horn, 861 P.2d 304, 307-08 (Okl. 1993); Mahorney v. Waren, 60 P.3d 38, 40 (Okla. Civ. App. 2002); see also Wong v. Ekberg, 148 N.H. 369, 375 (2002).

Therefore, Riggs will not be permitted to rely on Rule 1.15 as a basis for his theft by conversion claim.

III.  Motions in Limine

Riggs filed three motions in limine, and Peschong filed one.

A.  Riggs/RMC

1.  Inconsistent Defenses

Riggs moves in limine to preclude Peschong from raising defenses "that are inconsistent with prior findings and Orders of this Court."  The motion is not sufficiently specific to permit a ruling.  To the extent Riggs intended to bar consideration of Peschong's counterclaim at trial, that issue was resolved by summary judgment.  In addition, as is discussed above, Peschong will not be permitted to raise, argue, or offer evidence of her theory of a limitation on the amount owed, as articulated in her counterclaim.

2.  Loan/Champerty

Riggs moves in limine to preclude Peschong from referring to the money Gregory received under the Purchase Agreement as a "loan" or to the agreement as involving "champerty." Riggs asserts that Gregory agreed in his deposition that their agreement was an assignment and not a loan. He also contends that because the purpose of the agreement was to provide Gregory with money for his living expenses in exchange for a portion of Gregory's expected fees, the agreement does not involve champerty.[1]

In response, Peschong states that she intends to offer evidence at trial that the Purchase Agreement was a loan, while acknowledging that other evidence may show that it was not a loan. The Agreement has been construed to convey an interest in Gregory's contingent fees, other fees, or reimbursements paid in connection with the Fen-Phen cases. Therefore, the Agreement is not a loan note, and the parties shall not refer to the transaction as a loan.

---

[1] Champerty and maintenance refers to an agreement whereby a nonparty to a suit provides money or assistance to prosecute or defend in exchange for an interest in the proceeds of the suit or a nonparty receives an assignment of the action. See Ladd v. Higgins, 94 N.H. 212, 215 (1946); Markarian v. Barkis, 89 N.H. 370 (1938).

Peschong also asserts that she intends to show that the Agreement conveyed an interest in the Fen-Phen judgment proceeds, which would bring the Agreement within the meaning of champerty. The Agreement, however, has been construed to be limited to payment from the contingent fees Gregory would receive. Therefore, the term "champerty" does not apply to the circumstances in this case.  To avoid unnecessary confusion, the parties shall not use the term "champerty" at trial.

### 3. Fee Sharing

Riggs moves to preclude Peschong from raising an affirmative defense that the Purchase Agreement is void, as against public policy, because it is a fee sharing agreement in violation of the Rules of Professional Conduct.  Riggs asserts that Peschong failed to plead the defense in her answer and first raised it in her pretrial statement.  Riggs also asserts that proving the defense would require expert witness testimony about the application of the Oklahoma Rules of Professional Conduct.

Peschong objects to the motion, contending that the affirmative defense that the Agreement is void as being against public policy at trial need not be pled in an answer.  She also states that under Federal Rule of Civil Procedure 12(h)(2) she can raise the defense at trial.  Peschong further argues that the

void defense comes within a defense of unconscionability, which was pled.

Federal Rule of Civil Procedure 8(c) requires parties to plead affirmative defenses and lists some of the defenses that must be included in an answer.  The list includes the affirmative defense of "illegality."  Under New Hampshire law, a contract that is void as being against public policy is closely related to the concept of contract illegality.  See Perreault v. Hall, 94 N.H. 191, 194 (1946); Piper v. Boston & Me. RR, 75 N.H. 435.  In contrast, "unconscionability" does not give notice of a defense that the asserted agreement is void as against public policy. See Pittsfield Weaving Co., Inc. v. Grove Textiles, Inc., 121 N.H. 344, 346 (1981) (describing unconscionability to include "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party" and "[t]he existences of gross inequality of bargaining power").

The list of affirmative defenses in Rule 8(c)(1) is not exhaustive.  5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 1271 (2008).  Instead, parties are required to "state any avoidance or affirmative defense."  Fed. R. Civ. P. 8(c)(1).  Peschong's affirmative defense that the

Agreement is void as being against public policy fits within the pleading requirement of Rule 8(c)(1).

Failure to plead an affirmative defense in the answer, as required by Rule 8(c)(1), generally results in waiver of the defense. Jewelers Mut. Ins. Co. v. N. Barquet, Inc., 410 F.3d 2, 11 (1st Cir. 2005); 5 Federal Practice and Procedure, § 1278. "There are certain exceptions to the Rule 8(c) bar which might be invoked, inter alia, either where (I) the defendant asserts it without undue delay and the plaintiff is not unfairly prejudiced by any delay, . . . or (ii) the circumstances necessary to establish entitlement to the affirmative defense did not obtain at the time the answer was filed." Davignon v. Clemmey, 322 F.3d 1, 15 (1st Cir. 2003).

Peschong contends that Rule 12(h)(2)(C) allows her to raise the defense at trial. Rule 12(h)(2) provides: "Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to claim may be raised at trial." The rule, therefore, permits a party to raise, at trial, the opposing party's failure to state a legal defense. Rule 12(h)(2)(C) does not contradict the pleading requirements of Rule 8(c)(1).

Peschong also suggests, in passing, that Riggs is not prejudiced by her late disclosure because Riggs has known since

at least August 7, 2008, that she intended to raise the defense. Peschong filed her objection to Riggs's motion for summary judgment on Peschong's counterclaim on August 7, 2008. In the objection, Peschong improperly raised the defense as grounds to invalidate the Agreement. See LR 7.1(a)(1). Although the court pointed out in the order that the new theory would not be considered, Peschong failed to seek leave to amend her answer to include the defense. Under those circumstances, Riggs could have assumed that Peschong would not pursue that defense.

Because Peschong fails to provide good cause to excuse her from the bar of Rule 8(c), the defense that the Agreement is void as against public policy is deemed to be waived.

Even if that were not the case, however, Peschong would face another hurdle.[2] Gregory set up and funded an escrow account for money that he agreed he owed under the Purchase Agreement. In addition, the magistrate judge found that during the hearing on Riggs's motion for a preliminary injunction, held on November 30, 2006, Gregory's counsel acknowledged that RMC is entitled to recover at least some of the claimed amount under the Purchase Agreement. Given Gregory's concession that the Purchase

---

[2] Rigg's theory that expert testimony would be required on the Oklahoma Rules of Professional Conduct appears to lack merit.

Agreement is an enforceable contract, it would be difficult for Peschong to prove at trial that the Agreement is void.

B.  Peschong

Peschong asserts that Riggs "has a practice" of referring to prior court orders, pleadings, perceived discovery abuses, and statements as if they were evidence and of making unfounded accusations of misconduct against Gregory's children and other third-parties. She moves to preclude Riggs from making any such references at trial. Riggs responds that he intends to refer to discovery issues if necessary to present a complete picture of what evidence is available, to introduce court orders, and to include combative statements Gregory made during his deposition.

The evidence at trial will be governed by the Federal Rules of Evidence. In particular, as a pro se litigant, Riggs would be well-advised to become familiar with the evidentiary rules pertaining to relevance, witnesses, hearsay, and authentication. See Fed. R. Evid. 401, 402, 403, 404, 608, 611, 613, 801-807, 901, 902, and 1002-1004. Discovery disputes, court orders, pleadings, and matters extraneous to the issues in this case are not admissible evidence. Riggs will be expected to proffer evidence that is relevant and material to the elements of his

claims, and the court will not permit excursions into matters that are not relevant and material.

## Conclusion

For the foregoing reasons, the plaintiff's motion in limine to bar inconsistent defenses (document no. 189) is granted.  The plaintiff's motion in limine to bar references to "loan" and "champerty" (document no. 190) is granted.  The plaintiff's motion in limine to bar the defense of fee sharing (document no. 191) is granted.

The defendant's motion in limine to restrict the plaintiff's evidence to that which is admissible (document no. 199) is granted to the extent that evidence at trial will be governed by the Rules of Evidence.

SO ORDERED.

                                    /s/ Joseph A. DiClerico, Jr.
                                    Joseph A. DiClerico, Jr.
                                    United States District Judge

March 5, 2009

cc: Peter G. Callaghan, Esquire
    Douglas N. Gould, Esquire
    Resource Management Company, Benjamin C. Riggs, Jr.